UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:05-CR-00576 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE ANN ALDRICH |
| | ) | |
| ANTHONY STANLEY, | ) | Magistrate Judge Kenneth McHargh |
| | ) | |
| Defendant. | ) | |
| | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

This is a criminal case in which the United States of America (the "Government") accuses Anthony Stanley ("Stanley") of knowingly and intentionally possessing with intent to distribute (Count 2) and knowingly and intentionally distributing (Count 1) 50 grams or more of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and of being a felon in possession of a firearm and ammunition (Count 3) in violation of 18 U.S.C. § 922(g)(1). The charges in this case arise out of an arrest by officers of the Caribbean Gang Drug Task Force ("CGDTF"), a Cleveland, Ohio, multi-agency federal, state and local drug task force, on November 22, 2005, where police officers discovered marijuana, crack cocaine, a loaded .357 revolver and a box of .357 ammunition in Stanley's possession. In a memorandum and order dated August 17, 2006 [Docket No. 40], the court denied Stanley's motion to suppress. Currently before the court is Stanley's motion to reconsider that ruling [Docket No. 42]. For the following reasons, the court denies the motion to reconsider.

Stanley raises three arguments in support of his motion to reconsider. First, he argues that his statement about the location of the firearm seized was the product of questioning or its functional equivalent in violation of his *Miranda* rights and that the firearm therefore should be excluded.

However, the court found that the testimony and evidence presented at the evidentiary hearing on Stanley's motion to suppress established that Stanley volunteered the existence and location of the firearm after his girlfriend, Tiashonna Foster ("Foster") had consented to a general search of the apartment where Stanley and Foster lived.  A careful review of Stanley's testimony shows that he blurted out the existence and location of the gun and ammunition, and that his statement was not produced as a result of any questioning or its functional equivalent by the police.  There is therefore no reason to exclude the firearm.  Although the court did not rely upon Stanley's statement in denying suppression of the firearm in its August 17 memorandum and order, it certainly could have.

Instead, the court found that Foster's consent to search the apartment was voluntary and that she had the capacity to do so, and that the firearm and ammunition seized were or would have been found as a result of that search pursuant to her consent.  Stanley's second argument concerns the validity of Foster's consent under *Georgia v. Randolph*, 126 S.Ct. 1515 (2006).  Stanley's counsel correctly states the rule of *Randolph*, that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident."  *Id.* at 1526.  However, nothing in the testimony or evidence presented at the evidentiary hearing supports Stanley's assertions that (a) the police officers requested his consent to search the apartment or (b) that once asked, Stanley refused consent.  The court finds that because the officers never asked for Stanley's consent to search and Stanley therefore never refused consent, *Randolph* is inapplicable to this case.

Stanley's third and final argument concerns the seized drugs contained in the Crown Royal bag. In the August 17 memorandum and order, the court found that two different doctrines prevented suppression of that evidence.  First, the "immediate control" doctrine permits officers to search the area

within Stanley's immediate control just *prior to* his arrest. *United States v. Romero*, 452 F.3d 610, 619-20 (6th Cir. 2006). That Stanley might not be able to reach the bag and the drugs therein *after* his arrest is immaterial. Stanley, just prior to his arrest, was in the dining room, and the bag was sitting on a table in that room, under his "immediate control" prior to his arrest, which allowed the police officers to search that room, including that bag, even if it had been closed. Second, the court found that the bag was not closed, and that the drugs contained therein were within the officers' "plain view" under *Horton v. California*. 496 U.S. 128, 138-39 (1990) (citations omitted). Stanley does not raise any new arguments concerning the application of these doctrines in this case, and the factual assertions made in his motion to reconsider are not supported by the  testimony or evidence presented at the evidentiary hearing.

For the foregoing reasons, the court denies the motion for reconsideration [Docket No. 42].

IT IS SO ORDERED.

/s/ Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: October 2, 2006**